No. DA 06-0792

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 233N

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ANNE HISLOP,

        Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DC 06-264C,
The Honorable Stewart E. Stadler, Presiding Judge.

COUNSEL OF RECORD:

       For Appellant:

           Russell Jones, Attorney at Law, Spokane, Washington

       For Respondent:

           Hon. Mike McGrath, Attorney General; Jennifer Anders, Assistant
Attorney General, Helena, Montana

           Ed Corrigan, County Attorney; Tammi Fisher, Deputy County Attorney,
Kalispell, Montana

_____

Submitted on Briefs:  August 15, 2007

Decided:  September 11, 2007

Filed:

_____
                        Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Anne Hislop (Hislop) appeals from the Order of the District Court for the Eleventh Judicial District, Flathead County, denying her motion to suppress evidence based upon her claim of a lack of particularized suspicion to support the stop. We affirm.

¶3 Flathead County sheriff's deputy Travis Bruyer (Deputy Bruyer) and Forest Service Law Enforcement Officer Brad Treat (Officer Treat) were on routine patrol on United States Forest Service property in the vicinity of Hungry Horse, Montana, on September 17, 2005. Deputy Bruyer and Officer Treat saw Hislop's car parked at approximately 11:00 p.m. in an area in which the Forest Service did not allow overnight camping. Signs placed on roads leading into the area indicated "day use only." The officers knew that the area in question was popular for underage drinking and other illegal activities. Deputy Bruyer and Officer Treat saw a number of "go cups" on the ground outside of Hislop's car. Deputy Bruyer and Officer Treat approached the car to identify the occupants, investigate underage drinking or other illegal activity, and to advise the occupants of the day use restriction.

¶4 Deputy Bruyer spoke to Hislop and requested her identification. Deputy Bruyer

observed that Hislop's eyes were watery and her pupils seemed dilated. Hislop and her passenger were both of legal drinking age. Her passenger admitted to having consumed alcohol. Hislop and her passenger provided identification to Deputy Bruyer. Deputy Bruyer returned to his patrol car to check for possible existing warrants. Officer Treat advised Hislop of the Forest Service restriction on overnight camping during the time that Deputy Bruyer ran the warrant check. Officer Treat smelled the odor of what he suspected to be marijuana. He asked Hislop whether she had any drugs in the car. Hislop responded yes and handed Officer Treat a bag of marijuana. Hislop later admitted to additional marijuana in the car. The officers also recovered this additional marijuana. Deputy Bruyer issued Hislop a citation for possession of dangerous drugs, a misdemeanor, and possession of drug paraphernalia, a misdemeanor.

¶5 Hislop filed a motion in Justice Court to suppress the evidence seized during her encounter with the officers. Hislop argued that the officers lacked particularized suspicion upon which to detain her based upon the fact that the federal regulations require a Forest Service supervisor to post notices of any closed or restricted areas "in such locations and manner as to reasonably bring the prohibition to the attention of the public." Hislop argued that the Forest Service supervisor had failed to post the restrictions regarding "day use only." She further contended that any items seized after the improper initial stop, including the marijuana, must be suppressed. She pointed out that the officers reported no discovery of additional particularized suspicion to support extending their initial stop to investigate possible underage drinking. Hislop filed a second brief in support of her motion to suppress in which she argued that the alleged

3

Forest Service restrictions at issue imposed a prohibition on camping, but did not impose a daylight use only restriction.

¶6    The Justice Court denied the motion on the grounds that the brief encounter and discussion lacked the "compulsive aspects" associated with an arrest and custodial interrogation. The court reasoned that the questioning regarding the marijuana took place soon after the officers had approached Hislop's car. Hislop appealed to District Court. The parties submitted new briefs and the District Court held a hearing on the matter at which Hislop and the officers all testified. Following the hearing, the District Court made findings of fact and entered an order denying Hislop's motion to suppress. Hislop appeals.

¶7    Hislop renews her argument on appeal that the officers lacked particularized suspicion for the initial stop and that their seizure of the marijuana constituted fruit of the poisonous tree stemming from the original illegal stop. She contends that no "daylight use only order" existed and thus her alleged violation of the order could not provide the basis for particularized suspicion. Hislop further contends that justification for a stop, if any existed, dissipated once the officers determined that Hislop and her passenger were of legal drinking age and not intending to camp on this site.

¶8    We review a district court's ruling on a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether its interpretation and application of the law are correct. *State v. Case*, 2007 MT 161, ¶ 16, 338 Mont. 87, ¶ 16, 162 P.3d 849, ¶ 16. We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which

4

provides for memorandum opinions. It is manifest on the face of the briefs and the record before us that settled Montana law clearly controls the legal issues and that the District Court correctly interpreted the law.

¶9 We affirm.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE